UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
YVONNE DAVIS, individually and as
Grandparent and Natural Guardian of O.C.,

                     Plaintiff,

- against -

DAVID C. BANKS,[1] in his official capacity as
Chancellor of the New York City Department of
Education, and THE NEW YORK CITY
DEPARTMENT OF EDUCATION,

                     Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-3265 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

Plaintiff Yvonne Davis brings this action individually and as grandparent and natural guardian of her minor grandson, O.C., pursuant to the Individuals with Disabilities Education Act ("IDEA"), codified at 20 U.S.C. §§ 1400 *et seq.* Plaintiff seeks review of a decision by a New York State Review Officer ("SRO"), reversing an Impartial Hearing Officer's ("IHO") denial of Plaintiff's challenge to her grandson's Individualized Education Plan ("IEP") for the 2019–20 school year. Specifically, the SRO rejected Plaintiff's request to be reimbursed for O.C.'s tuition and related services costs at the International Institute for the Brain ("iBRAIN" or "iBrain") for the 2019–20 school year.

For the reasons below, the Court grants Plaintiff's motion for summary judgment and denies Defendants' cross-motion for summary judgment.

---

[1] David C. Banks was appointed as Chancellor of New York City Department of Education effective January 1, 2022. (Dkt. 34, at 1 n.1.) The Clerk of Court is respectfully directed to amend the case caption accordingly.

## LEGAL STANDARDS

### I.      IDEA's Legal Framework

New York State must make a "free appropriate public education" ("FAPE") available to all children residing in the state with one or more qualifying disabilities in order to receive federal funding under the IDEA.  20 U.S.C. § 1412(a)(1)(A).  The New York City Department of Education ("DOE") is the local agency responsible for providing a FAPE to all qualifying disabled children.  *Melendez v. Porter*, No. 21-CV-579 (NGG) (LB), 2023 WL 4362557, at *2 (E.D.N.Y. July 6, 2023) (adopting report and recommendation).  "To provide a FAPE to each student with a disability, a school district must develop an IEP that is 'reasonably calculated to enable the child to receive educational benefits.'"  *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2020) (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014)).  "The IEP consists of an evaluation of the student's needs and a program of instructions that outlines 'the child's present educational performance, establishes annual short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'"  *Melendez*, 2023 WL 4362557, at *3 (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

Prior to the start of every school year, an "IEP team" for each student—known as a student's Committee on Special Education ("CSE")—meets to create the student's IEP for the upcoming school year.  *Id.* (citations omitted).  The CSE team *must* include, at a minimum: "the parents or guardians of the disabled child in question; the child's regular education teacher; the child's special education teacher; a school psychologist; and a district representative."  *J.E. v. N.Y.C. Dep't of Educ.*, 229 F. Supp. 3d 223, 231 (S.D.N.Y. 2017) (citing N.Y. Educ. Law § 4402(1)(b)(1)(a)).  Moreover, the CSE "shall include . . . a school physician, if specifically

requested in writing by the parent[/guardian] of the student or by a member of the school at least 72 hours prior to the meeting[.]"  N.Y. Comp. Codes. R. & Regs tit. 8, § 200.3(a)(1)(vii).

In addition, each state is also required to develop an administrative review process for parents who "wish to challenge the adequacy of their child's IEP." *Ventura de Paulino*, 959 F.3d at 525–26 (citing 20 U.S.C. § 1415(b)(6)–(8)).  New York State has implemented a "two-tier system of administrative review." *Id.* at 526 (quoting *Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158, 160 (2d Cir. 2004)).  "In the first tier, a parent can file an administrative 'due process complaint' [("DPC")] challenging the IEP and requesting a hearing before an [IHO]." *Id.*  In the second tier, a party can appeal the IHO's decision to the SRO.  *Id.*  After the SRO renders a final decision, the aggrieved party can seek judicial review in state or federal district court.  20 U.S.C. § 1415(i)(2)(A).

## II.    Federal Standard of Review

"Although the parties have styled their submissions as motions for summary judgment, 'the procedure is in substance an appeal from an administrative determination, not a summary judgment.'" *C.U. v. N.Y.C. Dep't of Educ.*, 23 F. Supp. 3d 210, 222 (S.D.N.Y. 2014) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)).  "The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review." *Id.* (citation omitted); *see also id.* ("[T]he court conducts an 'independent' review of the administrative record, basing its decision on the 'preponderance of the evidence.'" (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205 (1982))).

A federal court should not simply "rubber stamp" a state administrator's conclusions. *M.W. ex. rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 139 (2d Cir. 2013)  But federal courts must also be "mindful that [they] lack the 'specialized knowledge and educational expertise'

possessed by state administrators, and therefore, [the former] will defer to [the latter's] well-reasoned opinions on issues of education policy." *J.D. v. N.Y.C. Dep't of Educ.*, 677 F. App'x 709, 711 (2d Cir. 2017); *see also R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) ("[Federal courts] must give 'due weight' to the state proceedings, mindful that we lack 'the specialized knowledge and experience necessary to resolve . . . questions of educational policy.'" (citation omitted)). "Where the IHO and SRO disagree, reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence; courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012). However, when "[t]he SRO's finding is not supported by a preponderance of the relevant evidence, and its reasoning is neither persuasive nor consistent with the proper inquiry. . . the Court need not defer to its conclusion." *J.E.*, 229 F. Supp. 3d at 236; *Schreiber v. E. Ramapo Centr. Sch. Dist.*, 700 F. Supp. 2d 529, 547 (S.D.N.Y. 2010) ("[T]he [c]ourt may reject factual findings that are not supported by the record or are controverted by the record." (citation omitted)). Moreover, "[i]n reviewing the adequacy of an IEP . . . 'determinations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures.'" *J.E.*, 229 F. Supp. 3d at 233 (quoting *M.H.*, 685 F.3d at 244).

"A parent[ or guardian] who believes that his or her disabled child has been denied a FAPE under the IDEA may unilaterally place that child in a private school and then seek reimbursement from the school district." *Id.* at 231 (citations omitted). Courts apply the three-part *Burlington-*

*Carter* test[2] to determine whether the DOE is required to reimburse a parent for unilateral placement. *Ventura de Paulino*, 959 F.3d at 526. "A parent can obtain such reimbursement if: '(1) the school district's proposed placement violated the IDEA' by, for example, denying a FAPE to the student because the IEP was inadequate; (2) 'the parents' alternative private placement was appropriate'; and (3) 'equitable considerations favor reimbursement.'" *Id.* 526–27 (quoting *T.M.*, 752 F.3d at 152). The burden of proving all three prongs of the test rests on the party seeking relief. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005). Regarding the first prong, the moving party must show one of two factors to prove that a child was denied a FAPE: "either (1) that the state did not comply with the procedural requirements of IDEA; or (2) that the challenged IEP was not 'reasonably calculated to enable the child to receive benefits.'" *Carrillo v. Carranza*, No. 20-CV-4639 (CM), 2021 WL 4137663, at *10 (S.D.N.Y. Sept. 10, 2021) (quoting *Rowley*, 458 U.S. at 206–07).

## BACKGROUND

### I.    Factual Background[3]

Plaintiff is the grandparent and natural guardian of O.C., a nine-year-old student during the 2019–20 school year, who is diagnosed with, among other things, intraventricular hemorrhage (bleeding inside and around the brain's ventricles), necrotizing enterocolitis with bowel restriction (and revision), a brain cyst, and seizures. (Dkt. 37, ¶ 2.) O.C. is non-verbal and non-ambulatory,

---

[2] *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74, (1985) ("Burlington"); *see also Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) ("Carter").

[3] The following facts are taken from the Administrative Record (Dkt. 18) and the parties' motions (Dkts. 32–39). The facts are undisputed unless otherwise noted.

but can communicate non-vocally through assistive technology and alternative communication devices. (*Id.* ¶ 4.) O.C. receives all nutrition through a "gastric tube." (R. 658.)[4]

### A.    Pre-IEP Evaluations and Scheduling

#### 1.    Social History Update and Psychoeducational Evaluations

On January 9, 2019, O.C.'s CSE contacted Plaintiff informing her that a Social History Update ("SHU") for O.C. was scheduled for February 6, 2019, in preparation for the upcoming 2019–20 school year IEP meeting. (R. 711.) On January 22, 2019, the CSE contacted Plaintiff to inform her of a psychoeducational ("PE") evaluation scheduled for January 29, 2019, also in preparation for the upcoming IEP meeting. (R. 710.) Plaintiff and O.C. did not appear at the January 29 PE evaluation. The next day, the CSE sent an email to Plaintiff with a rescheduled appointment date for the PE evaluation, February 26, 2019. (R. 709.) On February 6, 2019, Plaintiff and O.C. did not appear for the scheduled SHU. (R. 708.) On February 11, 2019, Plaintiff spoke with the CSE over the phone, informing them that O.C. would be "going for hip surgery on 2/26 and w[ould] not be able to [attend his] rescheduled appointments." (R. 707.) On March 4, 2019, Plaintiff and the CSE spoke over the phone again, and Plaintiff advised them that O.C. was "in a body cast . . . for the next 4 – 6 weeks" and the CSE agreed to "reach out" later to reschedule O.C.'s SHU and PE evaluations. (R. 706.) Two weeks later, the CSE sent Plaintiff an email scheduling O.C.'s SHU for March 27, 2019; however when the CSE called Plaintiff on that day, she had to reschedule due to a conflicting appointment. (R. 704–05.) Ultimately, Plaintiff was able to telephonically complete the SHU on April 24, 2019. (R. 701–02.) The PE evaluation was never completed. (R. 20.)

---

[4] All references to "R." refer to the certified Administrative Record. (*See* Dkt. 18.) The Administrative Record is Bates stamped with "SRO [page number]" and the Court's citations herein use the Bates page numbers rather than the internal pagination of the constituent documents.

2.      Scheduling IEP Meeting

On February 19, 2019, Plaintiff sent the CSE a letter requesting that a DOE physician attend O.C.'s 2019–20 IEP meeting. (R. 922–24.) A few months later, on April 1, 2019, the CSE sent a notice to Plaintiff via email scheduling the IEP meeting for May 1, 2019. (R. 703.) Plaintiff wrote the CSE on April 23, 2019, alerting them, *inter alia*, that the April 1st meeting notice did not include the DOE physician in the participants list, and further, that she had not yet received the required medical accommodation and special transportation forms that O.C.'s physician needed to fill out prior to the IEP meeting. (R. 584–86.) In response, the CSE rescheduled O.C.'s IEP meeting to May 21, 2019, and added a DOE physician to the meeting notice. (*See* R. 591 (district's meeting notice dated April 23, 2019, listing "Dr. Madrigal" as physician attendee).)[5]

On May 20, 2019, the day before the rescheduled IEP meeting, the CSE reached out to Plaintiff to request iBRAIN's progress reports (R. 699). Plaintiff responded that iBRAIN was supposed to have sent them over and that she would call the school to remind them to do so. (*Id.*) Later that evening, Tiffany Semm, iBRAIN's Director of Special Education, emailed the CSE with O.C.'s proposed IEP. (R. 698 (email with attachments time stamped May 20, 2019 at 6:36 p.m.).) The next morning, May 21, 2019, the CSE responded to Ms. Semm via email, informing her that the documents were supposed to have been sent at least 72 hours prior to the IEP meeting and therefore the meeting would have to be rescheduled to give the CSE sufficient time to review the documents. (*Id.*) The CSE also called Plaintiff, informing her that they would reschedule the IEP meeting given the late receipt of the school's reports. (R. 697.) Plaintiff responded that she would

---

[5] The Court notes that the district's record regarding communications between the CSE and Plaintiff appears to be incomplete. For example, the record does not include any entry for the CSE meeting notice sent out on April 23, 2019, rescheduling the IEP meeting to May 21, 2019. (*See* R. 702 (showing entry for 4/23/2019 "Notice of IEP Meeting" for 5/1/2019, but nothing for the rescheduled 5/21/2019 meeting).)

make herself "available to the meeting" and "had no preferences" for the rescheduled date.  (*Id.*)
Later that day, the CSE sent Plaintiff another IEP meeting notice, rescheduling the meeting for
June 6, 2019.  (R. 594 (dated May 21, 2019).)[6]  Three days later, on May 24, 2019, the CSE
rescheduled the IEP meeting a final time, moving it up to June 5, 2019, "after learning that the
DOE physician was not available to attend" on June 6th.  (R. 831; *see also* R. 597.)

**B.**      **IEP Meeting**

On June 5, 2019, the CSE convened at 9:00 a.m. to develop O.C.'s IEP for the 2019–20
school year.  (R. 694.)  However, Plaintiff, was still in transit at the meeting's start time.  (*Id.*)  By
10:00 a.m., her advocate, who was present at the meeting, informed the rest of the CSE that
Plaintiff had gotten lost and was returning to her home in Brooklyn.  (*Id.*)  According to
Defendants, the CSE asked Plaintiff's advocate if Plaintiff could participate via phone, but the
advocate insisted that Plaintiff needed to attend in person.  (*Id.*)  At approximately 10:05 a.m.,
Plaintiff's advocate and the iBRAIN team left the meeting.  (*Id.*)  Again, according to Defendants,
at that time, the remaining members of the CSE contacted Plaintiff via phone to begin the meeting,
but Plaintiff said she needed another 30 minutes.[7]  (R. 693.)  The CSE allegedly called Plaintiff
back at 10:30 a.m. but she did not pick up.  (*Id.*)  The CSE commenced the meeting and created
O.C.'s 2019–20 IEP without Plaintiff, Plaintiff's advocate, the iBRAIN team, or a DOE

---

[6] The Court notes again that the district's official record contains no memorialization of
this May 21st meeting notice.  (C*ompare* R. 696–97 (showing correspondence on May 21 and May
24, 2019 containing no entry for May 21st meeting notice) *with* R. 594 (copy of May 21st meeting
notice sent by CSE to Plaintiff).)

[7] The Court notes that whether the CSE contacted Plaintiff regarding participating by
phone, and whether Plaintiff agreed to do so, are disputed facts.  (*See* R. 303 (Plaintiff testifying
at IHO hearing that she did not recall whether the CSE offered her a chance to participate by
phone).)

physician.[8]  (R. 682; *see also* R. 418–19 (district representative and CSE member, Khalid Brown, testifying that no DOE physician attended the IEP meeting).)

On June 17, 2019, the CSE issued a Prior Written Notice recommending that O.C. be placed in a 12:1+(3:1) (also known as "12:1+4")[9] special class at a DOE specialized public school, with occupational therapy, physical therapy, speech-language therapy, vision education services, and a 1:1 paraprofessional.  (R. 683.)   Four days later, Plaintiff sent the DOE a ten-day notice, indicating that she intended to unilaterally enroll O.C. at iBRAIN on the grounds that "the DOE ha[d] not offered [O.C.] a program or placement that can appropriately address his educational needs for the extended school year 2019-2020" and further that the CSE had not included a DOE physician despite Plaintiff's repeated requests prior to the IEP meeting.  (R. 928.)

## II.     Procedural Background

### A.     Due Process Complaint

On July 9, 2019, Plaintiff filed a DPC seeking "an interim order of pendency" to allow O.C. to remain at iBRAIN at the local school district's expense during the pendency of any administrative and judicial proceedings.[10]  (R. 840–42.)  Plaintiff argued that the DOE failed to provide a FAPE to O.C. in the 2019–20 IEP on the following grounds:

---

[8] Although the meeting was moved from June 6 to June 5 because of the physician's unavailability on June 6 (R. 831), it appears that the physician ultimately was not available for, and certainly did not appear at, the meeting on June 5 (R. 418–19).

[9] A 12:1+4 (or 12:1:4) refers to a classroom with no more than 12 students, one teacher, and one staff person for every three students, or a total of five adults for the 12 students.  *See Carrillo*, 2021 WL 4137663, at *2 (explaining 12:1:4 placements).

[10] The IDEA, under the "pendency" or "stay-put" provision, provides for a child to remain "in his or her then-current educational placement" with public funding while administrative and judicial proceedings are pending.  *Ventura de Paulino*, 959 F.3d at 526 (citing 20 U.S.C. § 1415(j)).

1. The DOE failed to hold the meeting at a time mutually agreed upon by Plaintiff and further failed to include a DOE Physician pursuant to her requests dated February 19 and April 23, 2019.  (R. 841.)

2. The IEP had "significant and unsubstantiated" reductions in O.C.'s related services and an inappropriate student-to-teacher ratio.  (*Id.*)

3. The IEP did not categorize O.C. as a student with "Traumatic Brain Injury." (R. 841.)

4. The 12:1+4 classroom ratio is inappropriate.  (R. 842.)  The DOE failed to comply with state regulations in its recommendation of "school program and placement" for O.C., who has "highly intensive management needs requiring a high degree of individualized attention and intervention."  (R. 841 (citing N.Y. Comp. Codes R. & Regs. Tit. 8, § 200.6(h)(4)(ii)(a)).)[11]

5. The DOE failed to place O.C. in the "least restrictive environment" ("LRE"). (R. 841–42.)

6. The DOE's recommendation does not offer an extended school day, which O.C. requires "to make meaningful progress."  (R. 842.)

7. The recommended school, Chelsea Prep School, [was] the identical recommendation for the 2018–19 school year, which "Plaintiff [had previously] investigated and determined to be inappropriate for her grandson's needs."  (*Id.*)

Lastly, the DPC proposed the following terms of settlement: (1) DOE funding of O.C.'s tuition at iBRAIN for the 2019–20 extended school year, (2) DOE funding of O.C.'s transportation costs including a 1:1 travel aid, and (3) reconvening the CSE for an annual review.  (*Id.*)

---

[11] Section 200.6(h)(4)(ii)(a) requires that the maximum class size for students "whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction."  N.Y. Comp. Cods R. & Regs. tit. 8, § 200.6(h)(4)(ii)(a).

### B.    IHO Hearing and Decision

1.    <u>Hearing Evidence/Testimony</u>[12]

IHO Israel Wahrman ("IHO Wahrman") was designated to hear Plaintiff's case and held

telephonic hearings on January 24, May 18, and May 27, 2020.  (R. 29.)  Throughout the hearings,

it was evident that Plaintiff had trouble hearing the other participants and minimizing background

noise as a remote participant:

> HEARING OFFICER WARHMAN: Ms. Davis, is there noise, something going on
> behind you?  Because since you joined us –
>
> MS. DAVIS: (Interposing) Oh.  Okay.
>
> HEARING OFFICER WAHRMAN: – I am hearing like – maybe you could –
>
> MS. DAVIS: Okay, I have the boys – well, I have the boys in the other room.  They
> miss [O.C.] and his toys.  Okay.
>
> HEARING OFFICER WAHRMAN: All right.  Well, because otherwise your
> phone, if you muted your phone, then we wouldn't hear the background behind
> you, and when you need to speak you can unmute it.

(R. 365 (excerpt from May 18, 2020 hearing); *see also* R. 361–63 (Plaintiff repeatedly interjecting

in conversation with "hello?" during May 18, 2020 hearing).)  Moreover, Plaintiff had great

difficulty opening exhibits and following the documentary evidence because she did not have

access to a laptop during the hearings.   (*See* R. 286–90; R. 289–90 ("[IHO Wahrman]: . . . [I]t

sounds like the parent is having – the grandmother's having a very hard time opening these

documents.  She may not even be able to.  [Plaintiff]: Yeah.  Because as I – as I explained to you

guys, I'm not that perfect with these kinds of things [(i.e., technology)], so.").)

---

[12] The Court assumes the parties' familiarity with the hearing record and only recites the
facts relevant to resolving their instant motions.

During the May 27th telephonic hearing (R. 332), the DOE's attorney cross-examined

Plaintiff at length regarding her non-attendance at the June 2019 CSE meeting:[13]

> [DOE attorney]: . . . . [A]ccording to the DOE's understanding, the parent, or the
> student's guardian, got lost on the way to the IEP meeting, which is why she didn't
> attend.  So I'm trying to ascertain when, in fact, she visited . . . the DOE before.
>
> [IHO Wahrman]: . . . . [D]o you understand the question, or do you want it repeated,
> Ms. Davis?
>
> [Plaintiff]: Yeah.  I think I need it repeated, because I don't understand.
>
> . . . .
>
> [DOE attorney]: Do you remember the last time you attended an IEP meeting for
> [O.C.]?
>
> [Objection overruled.]
>
> [Plaintiff]: I don't remember the year, but the – the one before – I think it was the
> last year, 2019, when I got lost.  The one before that I had attended.
>
> [DOE attorney]: Okay, I think that IEP is in evidence.  Let me take a look.  Are you
> referring to the meeting that took place in 2018?
>
> [Plaintiff]: I think it was that.  Yes.
>
> . . . .
>
> [DOE attorney]: Okay.  So even though you don't remember the year, is it fair to
> say that you've been to CSE 10 for [O.C.'s] IEP process in the past?
>
> [Plaintiff]: Yes.

(R. 274–78.)  The DOE attorney continued:

> [DOE attorney]: Okay.  Now, you received an IEP meeting notice for a meeting on
> June 5th of 2019.  Do you remember traveling to an IEP meeting on June 5th?
>
> [Plaintiff]:  I remember traveling to a[n] IEP meeting, yes.  But I don't remember
> what date it was.

---

[13] The underlying SRO decision erroneously finds that "[t]he nonattendance of the parent
[sic] and iBrain at the June 2019 CSE meeting was not an issue raised for consideration during the
impartial hearing and the IHO did not address it (see generally IHO Decision; Parent Ex. A)."  (R.
19.)  The Court will discuss the impact of the SRO's erroneous conclusion *infra* Discussion Section
I.B.

[DOE attorney]: Okay.  Are you remembering something in 2019?

[Plaintiff]: What I remember in 2019 with [the] IEP meeting, [was] when I took the train and I took the wrong train and I got lost.  That's the one that I remember.  I couldn't find my . . . way back, and by the time I – by the time I got the right train, it was too late and it was way out.

[DOE attorney]: And do you recall speaking with the [DOE] by phone on that morning?

. . . .

[Plaintiff]: No, I don't recall.

. . . .

[DOE Attorney]: Do you remember being told by the [DOE] that you could participate in the meeting by phone?

[Plaintiff]: No.  If they did, I don't remember.

[DOE attorney]: Okay.  Is there any reason that you were not available by phone that day?

[Plaintiff]: I don't remember.

[DOE Attorney]: Okay.  Do you go to work during the day?

[Plaintiff]: I don't work.

(R. 301–04.)

## 2. IHO Findings and Conclusions

On December 1, 2020, IHO Wahrman issued a decision finding that the DOE had not provided O.C. with a FAPE for the 2019–20 school year and consequently granted Plaintiff's requests for reimbursement of tuition, transportation costs, and related services costs for iBRAIN. (R. 34–35, 39.)   IHO Wahrman made the following relevant findings regarding his FAPE determination:[14]

1. The IEP meeting was "held without new evaluations, other than a new social history[.]"  (R. 34.)

---

[14] The Court only recites the findings relevant to resolving the parties' instant motions.

13

2. "The meeting was without a school physician despite the parent having made clear that a school physician was requested and needed." (*Id.*)

3. The DOE failed to consider a 6-1-1 class. (R. 34.)

4. O.C. required 60-minute related services sessions but the DOE inappropriately recommended 30-minute sessions without considering longer sessions. (R. 34 (citing Tr. 94, 206–07).)

5. The DOE failed to recommend assistive technology devices and services or "a school nurse despite the need for assistance with G-tube feeding and OC's complex medical needs." (R. 35.)

6. Although the DOE did not exclude Plaintiff from the IEP meeting— "[n]evertheless, given the information that the DOE [had] when it held its meeting," "the DOE failed to offer an appropriate program." (R. 37.)

Once IHO Wahrman found that the 2019–20 IEP failed to provide O.C. with a FAPE, he then analyzed whether iBRAIN was an appropriate placement, concluding that it was and that the equities favored Plaintiff. (R. 35–39.) Accordingly, he ordered the DOE to "directly fund the costs of tuition, related services and transportation for OC at iBrain for the 2019-20 school year" and provide "reimbursement for any costs incurred" to Plaintiff. (R. 39.)

## C.    SRO Decision

SRO Sarah L. Harrington ("SRO Harrington") reversed the IHO's decision on February 10, 2021, finding that O.C. *had* been offered a FAPE for the 2019–20 school year. (R. 27.) SRO Harrington made the following relevant findings regarding her FAPE determination:[15]

1. Neither the parent nor staff from iBrain attended the IEP meeting. Moreover, "[t]he nonattendance of the parent and iBrain staff at the June 2019 CSE meeting was not an issue raised for consideration during the impartial hearing and the IHO did not address it." (R. 18–19 n.10.)[16]

---

[15] The Court only recites the findings relevant to resolving the parties' instant motions.

[16] As the Court previously noted, SRO Harrington's determination—that Plaintiff's non-attendance was not raised during the impartial hearing and that IHO Wahrman did not address it in his decision—is squarely contradicted by the record. In fact, during the impartial hearing, the DOE attorney cross-examined Plaintiff at length regarding her non-attendance (*see* R. 274–78,

2.  The absence of a DOE physician at the meeting did not violate O.C.'s right to a FAPE because (1) the school psychologist did not think a medical doctor would have "been helpful or necessary," (2) the CSE had information regarding O.C.'s medical condition, and (3) Plaintiff did not attend the meeting, "making the physician's nonattendance of lesser consequence."  (R. 19.)

3.  The IHO's determination that the CSE meeting was "held without new evaluations of the student other than the social history update was factually inaccurate, as the hearing record reveals that, in addition to reviewing the April 2019 [SHU], the CSE reviewed a March 2019 classroom observation report, the May 2019 iBrain [IEP,] . . . and the student's May 2018 IEP."  (R. 20.)  Thus, "the June 2019 CSE had evaluative information sufficiently comprehensive to identify all of the student's special education and related services needs."  (*Id.*)

Once SRO Harrington found that O.C. was offered a FAPE for the 2019–20 school year, she declined to "reach the issue of whether iBrain was an appropriate unilateral placement for [O.C.] or whether equitable considerations support[ed] [Plaintiff's] request for relief."  (R. 27.) SRO Harrington concluded by modifying IHO Wahrman's order, "reversing that portion which found that the district [had] failed to offer the student a FAPE and order[ed] the district to fund the costs of the student's tuition at iBrain for the 2019–20 school year."  (R. 29.)

D.     **Federal Review**

Plaintiff commenced this action seeking federal review of SRO Harrington's decision on June 9, 2021.  (Dkt. 1.)  Defendants filed their answer on October 8, 2021.  (Dkt. 14.)  On January 4, 2023, the parties filed their cross-motions for summary judgment.  (Dkts. 32–39.)

**DISCUSSION**

I.     **Procedural Flaws Resulted in Denial of FAPE for O.C.**

"Procedural flaws do not automatically require a finding of a denial of a FAPE.  Only procedural inadequacies that individually or cumulatively result in the loss of educational

---

301–04); and IHO Wahrman addressed the issue in his decision, finding that the DOE did not exclude Plaintiff from the IEP (*see* R. 9).

opportunity or seriously infringe on a parent's participation in the creation or formulation of the IEP constitute a denial of FAPE." *Carrillo*, 2021 WL 4137663, at \*11 (citation omitted).  The IDEA provides "that a hearing officer may find that a child did not receive a FAPE only if procedural inadequacies: (i) impeded the child's right to a FAPE; (ii) significantly impeded the parents' opportunity to participate in the decision[-]making process regarding the provision of a FAPE; or (iii) caused a deprivation of educational benefits."  20 U.S.C. § 1415(f)(3)(E)(ii).

Plaintiff alleges two procedural flaws in the creation of O.C.'s IEP.  First, Plaintiff alleges that the DOE failed to consider sufficient evaluations when creating O.C.'s IEP.  (Dkt. 33, at 10.)  Second, Plaintiff alleges that the CSE failed to provide Plaintiff meaningful participation in developing the IEP.  (*Id.* at 13.)  The SRO concluded that neither of the alleged procedural deficiencies—individually or collectively—denied O.C. a FAPE.  The Court agrees with the SRO regarding Plaintiff's first claim, but disagrees with the SRO on her second claim.  The Court finds that the non-attendance of Plaintiff and the school physician at the CSE meeting were procedural flaws that denied O.C. a FAPE for the 2019–20 school year.

### A.    CSE Had Sufficient Evaluative Information

Plaintiff claims that the CSE relied on only three evaluations and assessments when creating O.C.'s IEP: (1) the March 2018 classroom observations, (2) the March 2019 classroom history observations, and (3) the April 2019 SHU.  (Dkt. 33, at 10–11 (citing R. 655, 683–84, 789).)  Plaintiff urges the Court to reject SRO Harrington's decision and defer to IHO Wahrman's determination on this issue, which concluded that "[t]he IEP meeting . . . was held without new evaluations, other than a new social history[.]"  (*Id.* at 11 (citing R. 34).)  Plaintiff then argues that federal regulations required O.C. to have updated evaluations in speech language therapy, occupational therapy, physical therapy, and vision, because these were the services he required.  (*Id.*)

SRO Harrington rejected the IHO's finding, and by extension Plaintiff's claim that the CSE improperly relied on only three evaluations/assessments, as factually erroneous. In her analysis, the SRO pointed to the school psychologist's testimony that the CSE reviewed five documents in preparation for O.C.'s IEP meeting: (1) the March 2019 classroom observations, (2) the April 2019 SHU, (3) the May 2019 comprehensive teacher report, (4) the 2017 PE evaluation, and (5) O.C.'s May 2018 IEP. (R. 20 (citing R. 821 (district psychologist's affidavit at paragraph 9)).) Moreover, to the extent Plaintiff's concern was that the 2017 PE evaluation was not "new", SRO Harrington found that it was Plaintiff and O.C. who had failed to attend the district's appointments for a new PE evaluation. (*Id.*) The Court has reviewed the record and finds that it supports the SRO's conclusion that the CSE had sufficient evaluative information at the June 2019 meeting. Therefore, the Court defers to the SRO's conclusion on this issue. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998); *see also Thomason v. Porter*, No. 21-CV-6713 (LJL), 2023 WL 1966207, at *13 (S.D.N.Y. Feb. 13, 2023) (rejecting plaintiffs' argument that CSE failed to consider sufficient evaluative information because "[t]he Parents have pointed to nothing in the record that would suggest that these additional evaluations were necessary to the CSE's determination.").

**B.      Plaintiff Was Denied Meaningful Participation in the IEP Meeting**

1.      Failure to Include Plaintiff as Grandparent/Guardian

Next, Plaintiff argues that the CSE's failure to include her in the IEP meeting amounted to denying O.C. a FAPE for the 2019–20 school year. (Dkt. 33 at 13–16.) Specifically, Plaintiff alleges that "[p]redetermination of a child's IEP amounts to a procedural violation of the [IDEA] if it deprives the student's parents of meaningful participation in the IEP process." (*Id.* at 15–16 (quoting *B.K. v. N.Y.C. Dept' of Educ.*, 12 F. Supp. 3d 343, 358 (E.D.N.Y. 2014)).) The Court first considers whether the SRO's finding regarding the issue deserves deference.

SRO Harrington found that Plaintiff did not attend the IEP meeting based on scant analysis, contained in a single footnote: "The nonattendance of the parent and iBrain staff at the June 2019 CSE meeting was not an issue raised for consideration during the impartial hearing and the IHO did not address it (see generally IHO Decision; Parent Ex. A)." (R. 18–19 n.10.)  However, as discussed, this finding was plainly erroneous and controverted by the record.  First, Plaintiff's DPC expressly stated: "[Plaintiff] asserts that the NYC DOE impeded [O.C.'s] right to a FAPE and *significantly impeded [Plaintiff]'s opportunity to participate in the decision-making process* regarding the provision of a FAPE to [O.C.]" (R. 841 (emphasis added).)  Further, the DPC alleged, "[W]hen developing the 6/5/2019 IEP for [O.C.,] . . . the NYC DOE failed to hold an annual review meeting at a time that was mutually agreeable with [Plaintiff] . . . ." (*Id.*)  Moreover, as partially set forth *supra*, the DOE attorney cross-examined Plaintiff at length regarding her nonattendance.  (*See* R. 301–04.)  And IHO Wahrman, in fact, addressed the issue in his decision.  (*See* R. 37.)  The SRO's finding regarding Plaintiff's non-attendance at the IEP is not supported by a preponderance of the evidence, and her reasoning was neither persuasive nor consistent with the proper inquiry.  Accordingly, the Court does not defer to the SRO's findings regarding Plaintiff's non-attendance.  *See E.H. v. N.Y.C. Dep't of Educ.*, 164 F. Supp. 3d 539, 553 (S.D.N.Y. 2016); *see also J.D. v. Rye Neck Union Free Sch. Dist.*, No. 22-CV-3039 (VB), 2023 WL 1797170, at *11 ("'[A] lesser degree of deference is owed to the SRO' on the issue of predetermination because 'one need not have a background in education or educational policy to consider and determine whether the CSE had an open mind going into' the meetings." (quoting *G.S. v. Pleasantville Union Free Sch. Dist.*, No. 19-CV-6508 (CS), 2020 WL 4586895, at *11 (S.D.N.Y. Aug. 10, 2020)))).  The Court next turns to the IHO's decision to determine if it should be afforded deference.

Overall, IHO Wahrman found that Plaintiff was denied a FAPE.  (R. 37.)  However, with

respect to Plaintiff's non-attendance of the IEP meeting, he concluded that the DOE did not

"exclude[]" Plaintiff from the meeting and, as support, cited to a portion of the DOE's closing

brief in the IHO hearing:

> In the closing brief, IHO Exhibit I, the DOE lays out a long list, an extensive history,
> over five pages of narrative showing what the DOE believes was a lack of
> cooperation by the parent, with regard to cooperation with new testing, timely
> submission of materials and appearance at scheduled meetings.  The parent *did* give
> consent for evaluation and in fact a social history was conducted on 4/24/2019. []
> And relevant documents *were* sent by iBrain to the IEP team. []  Given this record
> as laid out by DOE's counsel, I am not finding that the DOE excluded the parent.
> In fact, this record as laid out raises a legitimate question with regard to cooperation
> by the parent.  Nevertheless, given the information that the DOE did have when it
> held its meeting, as explained above, I find that the DOE failed to offer an
> appropriate program.

(R. 37 (citing R. 964–69[17](Exhibit I) (emphases added)).)  IHO Wahrman's analysis is confusing

and self-contradictory.  First he cites, seemingly with approval, the DOE's arguments about

Plaintiff's lack of cooperation in completing evaluations, timely submitting materials, and

appearing at meetings; yet, in the very next sentence, he finds that Plaintiff *did* comply with

completing evaluations and that relevant documents *were* timely submitted.[18]   (*Id.*)  However,

these two findings in Plaintiff's favor apparently led IHO Wahrman to conclude that there *were*

"legitimate questions" regarding Plaintiff's cooperation and thus she was *not* erroneously excluded

from the IEP meeting.  (*Id.*)  The Court finds the IHO's final conclusion, i.e., that Plaintiff was not

---

[17] Other than identifying "Exhibit I" as a whole and referencing the "over five pages of
narrative"—IHO Wahrman did not include actual citations to the record in his analysis.  The Court,
after thoroughly reviewing Exhibit I, presumes that R. 964–69 are the pages that IHO Wahrman
was referring to in Exhibit I.

[18] The Court further notes that the DOE's own witness, Naomie Plancencio, conceded
during the impartial hearing that Plaintiff directed iBRAIN to send necessary materials to the CSE
ahead of the IEP meeting, including updated medical documentation and iBRAIN's IEP, and that
such actions constituted "a form of cooperation."  (R. 504–05; 509–10.)

erroneously excluded from the IEP meeting, to be illogical, devoid of adequate citations to the record, and neither "thorough" nor "careful."  Therefore, the Court need not, and does not, defer to IHO Wahrman's conclusion on this issue.  *J.E.*, 229 F. Supp. 3d at 236 (citing *Walczak*, 142 F.3d at 129).

The Court now turns to its own assessment of the non-attendance issue.  "The IDEA requires that parents of a child with a disability be afforded an opportunity to 'examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child.'"  *J.E.*, 229 F. Supp. 3d at 234 (quoting 20 U.S.C. § 1415(b)(1)).  In other words, "a school district cannot *predetermine* the contents of an IEP in advance of a [CSE] meeting."  *Mr. O v. Glastonbury Bd. of Educ.*, No. 20-CV-690 (VAB), 2021 WL 6134961, at *9 (D. Conn. Dec. 29, 2021) (emphasis added). Predetermination rises to the level of a substantive harm and deprivation of a FAPE "where the child's parents are 'effectively deprived' of 'meaningful participation in the IEP process.'"  *J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 648 (S.D.N.Y. 2011) (citation omitted); *see also J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 447 (9th Cir. 2010) ("Parental participation in the development of an IEP is the cornerstone of the IDEA." (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007)); *but see J.P. ex rel. J.P v. City of N.Y. Dep't of Educ.*, 717 F. App'x 30, 32 (2d Cir. 2017) (finding no predetermination when the "CSE heard [parents'] objections, considered materials they submitted, and convened a second meeting to address their objections and explain its reasoning")).  "[W]hile the CSE need not adopt a parent's recommendation for any particular aspect of an IEP[,] . . . 'it may not deprive the Parent

of meaningful participation by refusing to consider . . . the Parent's concerns.'" *J.E.*, 229 F. Supp. 3d at 234–35 (quoting *E.H.*, 164 F. Supp. 3d at 551).

Here, the CSE did not consider almost any of Plaintiff's concerns because the CSE excluded Plaintiff from the meeting.  In their opposition, Defendants cite no case law in support of their argument (*see generally* Dkt. 36, at 10–11; Dkt. 39, at 5–7); instead, they assert that "[t]he record clearly demonstrates that Plaintiff was given ample notice of an opportunity to attend the CSE meeting but *actively* chose not to—through no fault of the district."  (Dkt. 36, at 10 (emphasis in original).)  In an effort to prove their point, Defendants detail the purported offers they made to Plaintiff to participate by phone, after they learned she was lost on the subway (*id.*), and then go on to castigate Plaintiff for "giving up" after getting lost:

> Plaintiff took it upon herself not to participate by going home.  She could have taken any number of steps to try to find the meeting location after getting lost but failed to do anything other than give up.  Even after the CSE reached out telephonically to include her by phone, she failed to answer the phone when she said she would be available.  Accordingly, she made an active choice not to be present—either in person or telephonically—and cannot now blame the district for her decisions. . . . Plaintiff's stated reason for failing to attend, namely that she got lost, is completely unreasonable.  And her subsequent failure to participate in the meeting by telephone despite the CSE's repeated calls also defies logic.  As such, there was no procedural violation by the DOE in Plaintiff's failure.

(*Id.* at 10–11.)  Defendants' belligerent diatribe is plainly contradicted by the record and unmoored from reality and common sense.

As detailed above, Plaintiff, an elderly woman,[19] took the wrong train on the morning of the IEP meeting and got lost.  (R. 301–04, 694.)  Plaintiff's advocate, who was present at the meeting, advised the other members of the CSE that Plaintiff was lost, that she wanted to participate in person, and therefore asked that the meeting be delayed or rescheduled.  (R. 832.)

---

[19] (*See* Dkt. 38, at 13.)

The other members of the CSE insisted that the meeting go forward and that Plaintiff participate by phone.  (*Id.*)  The CSE refused to wait or reschedule the meeting when it became clear Plaintiff could not make it in person, so Plaintiff's advocate and the iBRAIN staff left in protest.  (*Id.*)  Defendants claim that the IEP team then called Plaintiff to hold the IEP meeting by phone and she told them that she would need another 30 minutes, but when the CSE called back in approximately 30 minutes, Plaintiff did not pick up.[20]  (*Id.*)  Based on these circumstances, Defendants argue that Plaintiff's refusal to participate by phone was an "active choice" that "defies logic" and that the act of getting lost is "completely unreasonable."  (Dkt. 36, at 11.)

The Court finds it is Defendants' argument and actions that defy logic, if not compassion. Plaintiff was lost on the subway during the time that the CSE insisted she participate in the IEP meeting by phone.  Aside from the technological impossibility of doing so, it clearly would have been inappropriate to require Plaintiff to participate remotely in the meeting while traveling underground in a subway car.  Furthermore, even if the Court were to credit Defendants' account about trying to arrange Plaintiff's remote participation 30 minutes after her advocate and the iBRAIN staff had left the meeting—when she theoretically could have been out of the subway— this still would have been an unreasonable way to proceed.  The record is replete with evidence that Plaintiff would not have been able to meaningfully participate in the IEP meeting remotely, especially given that the meeting would have involved intensive document review and discussion. The record shows that Plaintiff resides in a noisy home (R. 365), with multiple children (*id.*), without access to a laptop for reviewing documents (R. 286–90), and that Plaintiff is "not that

---

[20] As previously noted, whether the CSE offered Plaintiff an opportunity to participate by phone is a disputed fact. Plaintiff does not recall being contacted by the CSE that morning (R. 302), and only remembers that she "took the wrong train[,]" "got lost[,]" and "couldn't find [her] . . . way back" (R. 301).  She testified that by the time she found the right train, "it was too late and it was way out."  (R. 301–02.)

perfect" with technology (R. 289–90). Therefore, the Court finds that it was Defendants who made the *active* choice to exclude Plaintiff from the IEP meeting and acted unreasonably in refusing to reschedule the meeting.[21]

By holding the June 5th meeting without Plaintiff, Defendants predetermined O.C.'s placement and prevented Plaintiff from meaningfully participating in the IEP process. *J.G.*, 777 F. Supp. 2d at 648. Accordingly, the Court concludes that O.C. was deprived of a FAPE for the 2019–20 school year. *Id.*

### 2.   Failure to Include DOE Physician

Next, Plaintiff alleges that the CSE failed to include a DOE physician at the IEP meeting despite her repeated, timely requests to include one. (Dkt. 33, at 17.) Plaintiff specifically argues that "[g]iven O.C.'s medical conditions and recent surgery, it would have been more than appropriate to have a licensed physician give their opinion o[n] O.C.'s educational program in his days of recovery." (*Id.*) The Court first considers whether SRO Harrington's findings on the issue warrant deference.

SRO Harrington found that the DOE physician's absence from the meeting did not violate O.C.'s right to a FAPE because (1) the school psychologist did not think a medical doctor would have "been helpful or necessary," (2) the CSE had information regarding O.C.'s medical condition, and (3) Plaintiff's non-attendance at the meeting "mad[e] the physician's nonattendance of lesser consequence." (R. 19.) However, again, SRO Harrington's findings are not supported by a preponderance of the evidence and the Court therefore does not defer to her conclusions.

---

[21] As discussed *infra* in Section I.B.2, the school physician's absence provides another reason why the CSE should not have gone forward with the meeting on June 5th and why O.C. was denied a FAPE for the 2019–20 school year.

As to SRO Harrington's first two reasons, she relied heavily on the school psychologist's testimony to support her finding that a medical doctor was not necessary at the IEP meeting.  (*See* R. 19 ("The school psychologist testified that if there were some severe medical need possibly it would be helpful for the CSE team to include a doctor but in the student's case the school psychologist did not believe it would have been helpful or necessary in making a recommendation."); *id.* ("The school psychologist testified that the proposed iBrain IEP provided a description of the student's medical condition and his needs with respect to his medical condition.").)  However, during the impartial hearing, when the school psychologist was asked to explain why the CSE chose "multiple disabilities over traumatic brain injury" as O.C.'s classification (R. 448), and specifically, "which of [O.C.'s] impairments is not related to his brain injury" (R. 449), the psychologist conceded that he was "not . . . a brain doctor" and therefore "[didn]'t know" (R. 450)—belying the adequacy of the psychologist's opinions regarding O.C.'s medical conditions and SRO Harrington's reliance on those opinions.

As to SRO Harrington's finding that "the physician's nonattendance [is] of lesser consequence" because Plaintiff did not attend the meeting (R. 19)—the Court has already found that Plaintiff's non-attendance was attributable to Defendants having excluded her and amounted to a denial of a FAPE.  *See supra* Discussion Section I.B.1.  Thus, the SRO's reliance on Plaintiff's non-attendance certainly does not cure the physician's non-attendance.  Indeed, on its face, this reasoning is nonsensical: why would Plaintiff's non-appearance make the physician's non-appearance less significant?  If anything, as discussed, the physician's non-attendance only compounded the harm caused by Plaintiff's exclusion from the IEP meeting, since there was no one at the IEP meeting qualified to talk about O.C.'s medical issues.  Accordingly, SRO

Harrington's conclusion was not supported by a preponderance of the evidence and the Court turns to analyzing IHO Wahrman's decision. *See E.H.*, 164 F. Supp. 3d at 553.

IHO Wahrman found that "[t]he meeting was without a school physician despite the parent having made clear that a school physician was requested and needed" (R. 34), but did not elaborate any further on this issue. The Court therefore conducts its own analysis. New York regulations require that the CSE "shall include . . . a school physician, if specifically requested in writing by the parent[/guardian] of the student or by a member of the school at least 72 hours prior to the meeting[.]" N.Y. Comp. Codes. R. & Regs tit. 8, § 200.3(a)(1)(vii). Here, on multiple occasions, Plaintiff timely requested that a DOE physician attend the IEP meeting. (R. 922–23, 584–86.) In fact, Defendants agree that Plaintiff timely requested a DOE physician for the meeting and concede that one did not attend. (R. 418–19.) Thus, the CSE's failure to include a school physician at the meeting constituted a procedural flaw in the creation of O.C.'s IEP.

However, "[p]rocedural flaws do not automatically require a finding of a denial of a FAPE. Only procedural inadequacies that individually or cumulatively result in the loss of educational opportunity or seriously infringe on a parent's participation in the creation or formulation of the IEP constitute a denial of [a] FAPE." *Carrillo*, 2021 WL 4137663, at *11 (citation omitted). Here, Plaintiff was already denied an opportunity to participate in the creation of O.C.'s IEP because she was excluded from the meeting. Defendants' simultaneous refusal to accommodate Plaintiff's request for physician input at the meeting further exacerbated her lack of meaningful participation in the IEP process. Thus, the Court finds that this procedural violation, when combined with Plaintiff's exclusion from the meeting, deprived O.C. of a FAPE. *See J.E.*, 229 F. Supp. 3d at 234–35.

***

25

The Court need not analyze whether O.C.'s IEP was substantively sufficient because the Court concludes that it was procedurally deficient.  *See J.E.*, 229 F. Supp. 3d at 238 (declining to determine whether IEP was substantively sufficient after finding it was procedurally inadequate). In sum, Plaintiff has satisfied the first prong of the *Burlington/Carter* test.  The Court now turns to the second prong: whether Plaintiff's private placement at iBRAIN is appropriate to O.C.'s needs.

**II.      iBRAIN Was An Appropriate Placement for O.C.**

IHO Wahrman found that Defendants substantively failed to offer O.C. a FAPE because the "class size [] was too large, with related services in sessions that were too short, with[out] the benefit of assistive technology or needed nursing services."  (R. 35.)  He then found that iBRAIN was "an appropriate program" because "[a]ll of these were provided properly at iBrain."  (*Id.*)  He rejected the DOE's argument that iBRAIN "spends too little time with academics[,]" reasoning that "given the nature of OC's functioning, what is being addressed at iBrain appears to be targeted to OC's unique learning needs as a low functioning individual with disabilities across many domains."  (R. 36.)  In contrast, the SRO did not reach the merits on whether iBRAIN was an appropriate placement for O.C.  (R. 27.)  Furthermore, Defendants do not brief the issue—other than to insist that the Court need not reach it (Dkt. 36, at 24)—and Plaintiff asks only that the Court defer to IHO Wahrman (Dkt. 33, at 22).

Thus, because the Court is not being pointed to, and has not independently identified, anything in the record showing that IHO Wahrman's determination is unreasonable, *J.D. v. N.Y.C. Dep't of Educ.*, 677 F. App'x at 711 (counseling deference by district courts to state administrators' "well-reasoned opinions on issues of education policy"), the Court defers to IHO Wahrman's conclusion that iBRAIN was an appropriate unilateral placement for the 2019–20 school year.  *See E.M. v. N.Y.C. Dep't of Educ.*, 213 F. Supp. 3d 607, 620 (S.D.N.Y. 2016); *see also J.E.*, 229 F.

Supp. 3d at 238 ("Parents bear a lower burden to demonstrate the appropriateness of a private

placement than school districts do to demonstrate the provision of a FAPE. . . ." (citation omitted)).

The second prong of the *Burlington*/*Carter* test is satisfied.

## III.   The Equities Favor Plaintiff

Lastly, the Court turns to the third prong of the *Burlington*/*Carter* test and finds that the

equities favor Plaintiff.   IHO Wahrman stated the following regarding the equitable considerations

in favor of Plaintiff:

> Given that the DOE, I believe, did not offer an appropriate program for OC, the
> [grand]parent should not be faulted for placing this student, who has multiple
> disabilities and is medically fragile, in a program that provides intensity of
> instruction and services that appear to be addressing the complexity of OC's
> learning needs, even if this results in a large bill.   Had the DOE provided an
> appropriate program, the city would not be facing this large bill to cover the needs
> of this student.

(R. 37.)   He further reasoned, "[t]o penalize this extremely needy and multiply disabled student

when the DOE did not provide for an appropriate program I believe would simply be unjust." (*Id.*)

Finally, he concluded that full reimbursement for tuition, related services, and transportation was

appropriate:

> The guardian here cannot afford to lay out the cost of iBrain and then await
> reimbursement.   The guardian is unemployed and testified that she cannot afford to
> pay the cost of attendance at iBrain. [] In such a situation, where the parent cannot
> afford to come up with this amount of funds, the district is required to make direct
> payment to the school[.]

(R. 38.)   The SRO did not address whether the equities favor Plaintiff.   (R. 27.)   Defendants only

urge the Court not to reach the issue.   (Dkt. 36, at 24.)   The Court therefore defers to, and agrees

with, IHO Wahrman's decision, and finds that the equities strongly favor Plaintiff. *See E.M.*, 212

F. Supp. 3d at 620.

***

In sum, Plaintiff prevails on all three factors of the *Burlington*/*Carter* test.

27

**CONCLUSION**

For the reasons discussed above, Plaintiff's motion for summary judgment is granted and Defendants' cross-motion for summary judgment is denied.  Defendants are ordered to directly fund the costs of tuition, related services, and transportation for O.C. at iBRAIN for the 2019–20 school year.  The Clerk of Court is respectfully directed to enter judgment and terminate the case accordingly.  The Clerk of Court is further directed to amend the case caption to reflect David C. Banks as Defendant instead of Meisha Porter.

Additionally, pursuant to 20 U.S.C. § 1415(i)(3)(B), the Court may award reasonable attorneys' fees and costs to Plaintiff.  The Court directs the parties to submit a proposed briefing schedule on this issue within 14 days of this Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 25, 2023
        Brooklyn, New York

28